
CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 1 3 2017

JULIA C. DUDLEY, CLERK
BY: /s/ H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ORLANDO HARVEY,** | ) | CASE NO. 7:16CV00131 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **HAROLD W. CLARKE,** | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Orlando Harvey, a Virginia inmate proceeding pro se, timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of Harvey's confinement on a judgment in the Circuit Court of the City of Lynchburg for aggravated malicious wounding, malicious wounding, two counts of use of a firearm in commission of a felony, and participation in a criminal street gang. Respondent filed a motion to dismiss, and Harvey responded, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss and dismiss the petition.

I.

On March 20, 2011, around 11 P.M., teenaged cousins Marc Washington and Jahvonte Gilbert were jogging back to Gilbert's home from a house on Cherry Street in Lynchburg. Washington's mother had called and told Washington that she was on her way to Gilbert's house to pick him up. An unknown individual, standing thirty to forty feet away, shot at the two boys several times. Now wounded, Washington and Gilbert made their way back to the house on Cherry Street. Neither Washington nor Gilbert knew Harvey, and Harvey did not know the boys.

A single bullet struck Washington in the left hand, but Gilbert was hit twice. One bullet grazed three of Gilbert's toes and the second passed through his right foot. Gilbert required stitches on his right foot, as well as surgery that implanted pins in two toes on his left foot. The

injuries confined Gilbert to a hospital for two weeks and required use of a wheel chair and crutches for a time. He missed two months of school, and he testified that he could no longer bend his left toes that had pins in them, and that he experienced pain in his toes with some frequency. Additionally, Gilbert testified that he faced continuing occasional problems with balance and mobility, and he could not jump as high as he could prior to the shooting.

Around the same time as the shooting, Adrianne Chapman was driving Katisha Cash, Harvey's girlfriend at the time. Harvey called Cash for a ride. When they went to pick Harvey up, he appeared from the shadows breathing heavily and sweating, and told the women: "Drive, get out of here, just go." Trial Tr., 129-30, May 21, 2012. During the car ride, Harvey stated, "I think I killed him," referring to the people that Harvey had just shot at, thinking they were Tooley Boys.[1] Id. at 133-34, 140. Chapman also testified that Harvey specifically stated that he shot at two individuals that were running behind him. Id. at 134. Back at Chapman's house, Harvey wiped off a gun and laid it on a nightstand. Chapman testified that the gun that she saw that night was the same gun that Harvey was later arrested with. Lastly, Harvey told Chapman: "[D]on't forget that I know where you and your son sleep now." Id. at 139. Chapman told the court that she interpreted Harvey's statement as a threat to dissuade her from speaking to the police.

Days later, on March 23, Harvey fired the gun again inside Cash's apartment. Police arrived, and Harvey surrendered after a brief standoff.[2] Officers recovered the pistol, which matched casings recovered from the cousins' shooting and a bullet extracted from Gilbert's foot, a red do-rag with Harvey's identification in it, as well as a black jacket emblazoned with red

---

[1] The Tooley Boys are a Lynchburg subset of the Gangster Disciples/Folk Nation gangs, originating in Chicago. Id. at 248.

[2] Police ordered the occupants of Cash's apartment to come outside over a patrol car P.A. system. Harvey took twenty to thirty minutes to surrender.

2

"Halloween faces." Harvey admitted that the jacket was his, and testimony established that it was Nine Trey Bloods clothing. Additionally, Harvey's jacket contained ammunition that matched the earlier Gilbert-Washington shooting.

Lt. Daniel Black questioned Harvey regarding the Washington-Gilbert shooting, but Harvey denied involvement. However, Harvey did admit that there had been "some things going on with the Tooley Boys." Id. at 218. At trial, Det. Kevin Poindexter, a Lynchburg police gang expert, testified that a member of the Tooley Boys had killed a Nine Trey Bloods member in 2011. Det. Poindexter also testified that in the years prior to the Washington-Gilbert shooting, the Nine Trey Bloods had had several violent confrontations with rival gangs, including the Tooley Boys. Shandre Saunders, a Nine Trey Bloods member, was convicted of several crimes after shooting a cab driver caught in the middle of a dispute between the Tooley Boys and Bloods; also, Rodney Johnson, another Nine Trey Bloods member, was convicted of aggravated malicious wounding and use of a firearm for shooting a rival gang member in 2010.

Derrick Campbell, Harvey's childhood friend, testified that Harvey admitted to shooting the cousins as retaliation for the Tooley Boys' murder of one of Harvey's friends and fellow Bloods member, Brian Patterson. Also, Campbell stated that Harvey had concocted a false defense, that he would try to prove that he acted in self-defense by "[s]aying that the guys ran out at him with guns drawn and he was protecting his self." Id. at 238.

At trial, Sicily Sandidge, the mother of Harvey's son, testified that on the night of March 20, 2011, Harvey had visited their son at her house, three blocks away from where the shooting occurred. Harvey's uncle testified that Harvey sometimes stayed at his house, a ten minute walk from the shooting. However, Harvey's uncle did not recall anything unusual about March 20, and he did not think that Harvey had stayed with him that night.

3

During his testimony, Harvey acknowledged that he had been a Bloods member for several years, but stated that his murdered friend, Brian Patterson, had not been a Blood. He also testified that he had visited his son on the night of March 20, 2011, and he had begun walking to his uncle's house when four or five individuals, including Gilbert and Washington, approached him to ask what he was doing there. Harvey claimed self-defense at trial, testifying that one member of the group was armed. He stated that he did not know the individuals or if they were gang-affiliated. Because Harvey was in rival gang territory, though, he testified that he feared for his life and reacted to the confrontation by running and firing his gun in the direction of Gilbert and Washington's group. Further, he testified that he shot the victims from across the street, approximately thirty-five feet away. Harvey stated that he carried a gun for his own protection because "a lot of things [were] going on in the streets." Id. at 321. However, Harvey denied shooting the cousins in retaliation for Patterson's death.

Additionally, Harvey admitted that he: called Cash for a ride after the shooting, went to Chapman's apartment, stashed the pistol he had used in the Washington-Gilbert shooting in Cash's attic, and that he lied to Lt. Black and other officers about his involvement in the shooting. He acknowledged that he knew that the area where the shooting occurred was Tooley Boys territory, and that he knew Campbell because they had been childhood friends, but that they had had altercations while incarcerated together. He also testified to taking a loaded gun to visit his son, owning the gun and jacket recovered by police, and preferring to wear red to show his Bloods colors.

Additionally, Harvey attempted to call Kshawn Kelly to testify that Gilbert told Kelly that several people, including Gilbert and Washington, had run up on Harvey, and one member of the group had a gun. The Commonwealth objected because defense counsel never laid a

4

foundation with Gilbert to introduce the impeachment evidence, and also because the testimony was hearsay not subject to an exception. Kelly ended up only testifying that he knew Gilbert through basketball, even though Gilbert had earlier denied knowing Kelly.

Lastly, Lt. Ann Riley of the Lynchburg Police Department testified that she responded to the Cherry Street house on the night of the shooting and noticed a .22-caliber rifle inside the home.

The jury convicted Harvey on all counts.

Harvey appealed his convictions to the Virginia Court of Appeals, stating that (1) the evidence was insufficient regarding his aggravated malicious wounding charge, and (2) that the trial court erred in granting an instruction regarding the inference of malice from the deliberate use of a deadly weapon. The Court of Appeals denied his petition twice. He then appealed to the Virginia Supreme Court, but the court refused his appeal. On January 23, 2015, Harvey filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. He stated four claims of ineffective assistance of counsel. The Virginia Supreme Court denied Harvey's petition, and affirmed the denial on rehearing.

On March 10, 2016, Harvey filed the instant federal habeas petition, with the same four ineffective assistance claims as in his state petition. Harvey's petition states that trial counsel was ineffective for:

(1) failing to challenge or object to the sufficiency of evidence used to convict Harvey of criminal street gang participation pursuant to Va. Code § 18.2-46.2(A);

(2) failing to lay a proper foundation for a supporting self-defense/alibi witness, whose testimony would have exonerated him of his aggravated malicious wounding charge;

5

(3) failing to consult and/or obtain the assistance of an independent expert to adequately challenge and prove that the alleged victim's injuries pursuant to Va. Code § 18.2-51.2(A) were not permanent and significant; and

(4) failing to inform and disclose to Harvey relevant prosecution evidence which would have afforded him a fair and adequate opportunity to intelligently decide to accept a favorable plea deal offered by the Commonwealth.

Respondent moves to dismiss Harvey's habeas claims as without merit, and Harvey has responded to the motion.

## II.

To obtain federal habeas relief, Harvey must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (omitting internal quotations).

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest

state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). To meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)).

Federal courts review the merits of claims decided by the state courts on direct appeal under the deferential standard mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, a federal court may not grant a state prisoner's habeas application on a claim adjudicated by the state court unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d). Further, the AEDPA standard is "highly deferential" to both factual findings and legal conclusions, and the petitioner bears the burden of proof. Harrington, 562 U.S. at 105; Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

Harvey brings four claims of ineffective assistance of counsel. A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). "The petitioner must show both deficient performance *and* prejudice; the two are separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994) (emphasis added). For the first prong, Harvey must show "that counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Courts reviewing habeas petitions maintain a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

For the second prong, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

Harvey has exhausted the available state court remedies for each of his federal claims because Harvey has either "fairly presented his claim to the state's highest court" or "a state procedural rule would bar consideration if the claim was . . . presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) overruled on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Harvey's direct appeal is final and any additional state habeas action would be procedurally defaulted both under Virginia's statute of

limitations, Va. Code § 8.01-654(A)(2), and under Virginia's successive petition statute, Va. Code § 8.01-654(B)(2).

## III.

### A. Claim 1

In Claim 1, Harvey argues that counsel was ineffective for failing to challenge the sufficiency of the evidence of his criminal street gang participation conviction. Specifically, Harvey contends that counsel neglected to challenge the Commonwealth's failure to prove beyond a reasonable doubt that the Nine Trey Bloods (1) were a street gang[3] that had committed two or more prior predicate criminal acts, and (2) that Harvey shot Washington and Gilbert as a member and for the benefit of, at the direction of, or in association with the Nine Trey Bloods.[4] However, in Harvey's state habeas petition, the Virginia Supreme Court found that "[t]he record, including the trial transcript, demonstrates that counsel did challenge the sufficiency of the evidence establishing that [Harvey's] attack was connected to [Harvey's] gang affiliation. Counsel argued . . . the evidence showed [Harvey] was seeking personal revenge against his victims." Harvey v. Clarke, No. 150160, at 2 (Va. Nov. 16, 2015). Therefore, counsel did challenge the sufficiency of the evidence regarding the connection between Harvey's gang affiliation and the Gilbert-Washington shooting.

---

[3] A "criminal street gang" is defined under Va. Code § 18.2-46.1 (2017) as:
Any ongoing organization, association, or group of three or more persons . . . (i) which has as one of its primary objectives or activities the commission of . . . criminal activities; (ii) which has an identifiable name or identifying sign or symbol; and (iii) whose members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence . . . .
Va. Code § 18.2-46.1.

[4] Virginia's criminal street gang participation statute, Va. Code § 18.2-46.2(A) (2017), required the Commonwealth to prove that (1) Harvey was a criminal street gang member, (2) he knowingly and willfully participated in a predicate criminal act, and (3) that act was committed for the benefit of, at the direction of, or in association with the gang. Hamilton v. Commonwealth, 688 S.E.2d 168, 177 (Va. 2010).

Harvey also argues that the Commonwealth failed to show that the Nine Trey Bloods had committed two predicate criminal acts because Shandre Saunders was part of a different gang.[5] Harvey claims that Saunders was not a member of the Nine Trey Bloods because the Supreme Court of Virginia previously described Saunders as "a leader in a gang called the Garfield Avenue Bloods." Saunders v. Commonwealth, 706 S.E.2d 350, 351 (Va. 2011). On habeas review, the Virginia Supreme Court found that Harvey had not satisfied either prong of the Strickland test: "Detective Kevin Poindexter was qualified as an expert on gang activity in the Lynchburg, Virginia area. Detective Poindexter testified Saunders was a member of the Nine Trey Bloods and had previously been convicted of charges stemming from his shooting at members of the Tooley Boys." Harvey v. Clarke, No. 150160, at 2-3.

Further, Harvey has not offered any evidence that he informed counsel that Saunders was not a member of the Nine Trey Bloods. In fact, in an affidavit, counsel explicitly denied that Harvey had done so. Resp't's Mot. to Dismiss, Harvey v. Clarke, No. 150160, at 2-3, Ex. D, ¶ 3 ("[Harvey] also never advised [counsel] that Shandre Saunders was not a member of his gang."). On habeas review, Harvey carries the burden to prove that counsel knew or should have known that Saunders was not a Nine Trey Blood, and/or that membership of each gang was mutually exclusive.[6] Harvey has offered no evidence to show that Saunders was not a Nine Trey Blood, that he told counsel that Saunders was not a Nine Trey Blood, or that counsel knew or should

---

[5] The Commonwealth had introduced a crime committed by Saunders as one of the predicate acts of the Nine Trey Bloods gang for the purposes of proving that the Nine Trey Bloods satisfied the statutory requirements of a "street gang."

[6] Harvey cites Taybron v. Commonwealth, 703 S.E.2d 270 (Va. Ct. App. 2011), which held that the street gang participation statute requires that predicate actors must share the same overall organization, association, or group. In Taybron, the Commonwealth offered a crime of a different but similarly named local gang as a predicate act under the street gang statute. The Commonwealth never proved the relation between the predicate actor's gang and the defendant's gang, and also never claimed that the predicate act gang member was a part of the defendant's gang. Therefore, the Virginia Court of Appeals overturned the conviction based on insufficient evidence. Here, the Commonwealth offered the testimony of a Lynchburg gang expert, who stated that Saunders was a Nine Trey Blood. Harvey has not offered any evidence proving that Saunders was not a Nine Trey Blood, and therefore Taybron is unavailing to Harvey's argument.

10

have known that Saunders was not a Nine Trey Blood. Instead, Harvey relies on conclusory allegations that contradict the evidence in the record. Therefore, regardless of the Saunders opinion, which counsel was aware of,[7] counsel could have reasonably concluded that arguing that Saunders was not a Nine Trey Blood would be futile.

Additionally, Harvey argues that although he readily admitted his membership in the Nine Trey Bloods at trial, the Commonwealth failed to prove that Harvey shot Washington and Gilbert for the benefit of, at the direction of, or in association with the gang. Harvey specifically notes that Washington and Gilbert were not Tooley Boys. However, the Supreme Court of Virginia found that "the record, including the trial transcripts, demonstrates that [Harvey] believed his victims were members of the Tooley Boys and that members of that gang had recently killed a member of [Harvey's] gang." Id. At trial, Chapman testified that Harvey believed he had shot two Tooley Boys. Trial Tr., 134, May 21, 2012. Further, Det. Poindexter testified that Tooley Boys had recently murdered Harvey's Nine Trey Blood associate and friend, Brian Patterson. Harvey even admitted in his testimony that he did not feel safe, that he kept ammunition in his coat pocket, and that he felt he needed a firearm for protection in Tooley Boys gang territory. Accordingly, the Commonwealth introduced sufficient evidence to let the jury decide whether it believed that Harvey's actions satisfied the statutory requirements.

Lastly, due to the overwhelming nature of the Commonwealth's evidence, the state habeas court found that after the failed challenge to the sufficiency of the evidence, counsel could have reasonably believed that any further challenge was futile. Harvey v. Clarke, No. 150160, at 2. I agree with the Virginia Supreme Court's findings. Based on the record before me, I find that the state court's adjudication of Harvey's claim was not contrary to, or an

---

[7] Counsel represented Saunders in Saunders' appeal.

11

unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts and, thus, I will dismiss this claim.

## B. Claim 2

In Claim 2, Harvey contends that counsel was ineffective for failing to lay a proper foundation for an alibi and self-defense supporting witness, whose testimony would have exonerated Harvey from the aggravated malicious wounding charge.[8] Specifically, Harvey claims that the testimony of Kshawn Kelly would have shown that Gilbert and a group of other individuals had a plan to ambush Harvey on the night of the shootings. The claim is without merit.

First, counsel's performance was not deficient because Harvey never proffered an affidavit from Kelly regarding what Kelly's testimony would have stated. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990) ("The great failing of the appellant on his claim that other evidence should have been presented . . . is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called."); Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that habeas petitioners must support their claims with evidence; unsubstantiated self-serving statements cannot form the basis for habeas relief). Further, counsel did impeach Gilbert with Kelly's testimony, because Kelly testified that he knew Gilbert from playing basketball together, even though Gilbert denied knowing Kelly.

Also at trial, counsel could have reasonably believed that, in the face of the Commonwealth's evidence, Kelly's testimony would not help Harvey's case for self-defense, but

---

[8] Harvey likely means a self-defense supporting witness, only. Harvey admitted to shooting Washington and Gilbert; therefore, he would not have an alibi.

12

instead may have damaged Harvey's credibility further.[9] On habeas review, the Virginia Supreme Court found:

> Campbell's account of [Harvey's] admissions regarding the shooting comported with Gilbert's and Washington's testimony, thus bolstering the credibility of all three witnesses. There was no evidence at trial that Campbell could have learned the details of the relevant events or of [Harvey's] plan to claim self-defense from a source other than [Harvey].

Harvey v. Clarke, No. 150160, at 2. I agree with the state habeas court's analysis. Neither Gilbert nor Washington could identify the shooter, the forensic evidence suggested that the shooter had fired ten shots while moving over a distance of about forty yards, and all of the bullets and shell casings recovered were from the same weapon, which police recovered from Harvey during his arrest. Further, the Commonwealth's witnesses, including Adrianne Chapman, generally substantiated each other's testimony, but Kelly's testimony was completely contradictory, with no external evidentiary support.

Additionally, Harvey fails under the "prejudice" prong to show that there is a reasonable probability that, but for counsel's alleged mistakes, the outcome of the trial would have been different. For a valid claim of self-defense, Harvey needed to demonstrate to the jury that "he reasonably perceived an imminent threat of death or bodily harm and that his use of force in response to that threat was appropriately proportional." Id. at 6. At best, Harvey and Kelly's testimony might have shown that he was "entitled to use deadly force to defend himself from the one individual [Harvey] perceived to be armed with a gun." Id. However, Harvey fired indiscriminately from across the street, approximately thirty-five feet away. Even if the jury accepted all of Harvey's testimony as true, no other member of the alleged ambush group would

---

[9] Counsel could have recalled Gilbert as a witness and laid the foundation for Kelly's excluded testimony. However, counsel could have reasonably decided against doing so, because Kelly's version of events were unbelievable and Harvey's credibility was already damaged from his criminal record and his admission that he lied to police officers on multiple occasions.

have posed Harvey an imminent and reasonable threat of death or bodily harm. Accordingly, his reaction was inherently unreasonable, especially in light of the fact that Harvey never claimed that either Gilbert or Washington was the individual who was armed and nothing suggests that Gilbert admitted otherwise to Kelly.

"Likewise, [Harvey] has never suggested that he did not intend to shoot Gilbert and Washington. See McGhee v. Commonwealth, 248 S.E.2d 808, 810 (1978) (by arguing self-defense, 'a defendant implicitly admits' he intended to injure or kill his assailant)." Harvey v. Clarke, No. 150160, at 6. The state habeas court continued: "[Harvey's] claim of self-defense would have been unsuccessful even if counsel had laid a proper foundation for Kelly's testimony." Id. I agree with the Virginia Supreme Court's analysis. The state's adjudication of Claim 2 was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of facts. Harvey has failed to prove that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Thus, I grant the motion to dismiss as to Claim 2.

### C. Claim 3

In Claim 3, Harvey argues that counsel was ineffective for failing to consult with or obtain the assistance of a medical expert to contest whether Gilbert's injuries were sufficient to support Harvey's conviction for aggravated malicious wounding.[10]

On habeas review, the Virginia Supreme Court found that Harvey's claim did not satisfy the performance or the prejudice prong of Strickland:

> The record, including the trial transcript, demonstrates that one bullet grazed three toes on Gilbert's left foot, and another bullet went through his right foot. Gilbert

---

[10] The aggravated malicious wounding statute, Va. Code § 18.2-51.2, requires a severe injury that causes "permanent and significant physical impairment."

14

> had surgery on his left foot to place pins in two of his toes. At the time of trial, which was fourteen months after the shooting, Gilbert testified he was unable to bend the toes in which the pins were inserted and that he experienced pain in the toes from time to time. Gilbert further testified that he sometimes had problems with balance, walking, and running, and that he could no longer jump as high as he used to. Accordingly, there was ample evidence indicating that Gilbert suffered sufficiently grievous injuries . . . [Harvey] fails to proffer any favorable evidence that counsel might have obtained by consulting with a medical expert.

Id. at 6-7. I agree with the state habeas court's analysis. Harvey has not identified any violation of federal law, nor has he alleged that the state court unreasonably determined the facts. Instead, Harvey speculates that Gilbert exaggerated in his testimony.

However, not only did the Commonwealth provide sufficient proof of Gilbert's permanent and significant physical impairment, but Harvey has failed to proffer any favorable evidence that counsel may have obtained to contradict the testimony and photographic evidence. See Beaver v. Thompson, 93 F.3d 1186 (4th Cir. 1996) (holding "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"); Nickerson, 971 F.2d at 1136 (habeas petitioner must provide evidence and cannot rely on speculation or self-serving statements).

Therefore, The state's adjudication of Claim 3 was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of facts, thus I grant the motion to dismiss as to Claim 3.

### D. Claim 4

In Claim 4, Harvey claims that counsel was ineffective for failing to inform and disclose to him relevant prosecution evidence which would have afforded him a fair and adequate opportunity to intelligently decide to accept a favorable plea deal offered by the Commonwealth. Specifically, Harvey claims that he would have accepted a plea deal that limited his sentence to

seventeen years' imprisonment if counsel had told Harvey that Campbell planned to testify for the prosecution.

On habeas review, the Virginia Supreme Court found the claim satisfied neither the "performance" nor the "prejudice" prong of Strickland:

> The record, including the affidavit of counsel, demonstrates that, before trial, counsel advised [Harvey] that one or more of the Commonwealth's witnesses would testify that [Harvey] admitted shooting Gilbert and Washington. [Harvey] fails to proffer why knowing Campbell would testify against him, as opposed to another individual, would have caused him to accept the plea offer.
> Furthermore, at trial, [Harvey] testified he knew Campbell would be testifying against him because Campbell told [Harvey] he would be doing so. Campbell testified that he and [Harvey] were incarcerated together for approximately one month during February and March of 2012. The plea agreement [Harvey] references did not expire until April 25, 2012, and [Harvey] fails to indicate that he did not learn of Campbell's potential testimony in time to consider whether to accept the subject plea offer.[11]

Harvey v. Clarke, No. 150160, at 7. I agree with the state habeas court's analysis. At trial, Harvey testified that Campbell informed Harvey of his plan to testify against Harvey in exchange for Campbell receiving a more lenient sentence. Since the two men were separated on March 6, 2012, Campbell must have informed Harvey of his intent to testify before the plea deal's expiration on April 25, 2012. Counsel also informed Harvey that the Commonwealth had witnesses that would testify that Harvey admitted shooting Gilbert and Washington before the April expiration. Therefore, Harvey rejected the plea deal knowing that Campbell intended to testify against him; he also knew that the Commonwealth potentially had additional witnesses with similar testimony.

---

[11] In Harvey's state habeas petition, Harvey included a letter, supposedly from Campbell, in which Campbell recants his testimony as false and stated that he learned of the details of Harvey's crime from paperwork that Harvey kept in the jail cell. The state habeas court acknowledged the existence of the letter, but disregarded it because it was irrelevant to Harvey's claims of ineffective assistance of counsel. Harvey did not ever allege that he had known that Campbell would perjure himself, and it makes little sense that Harvey would plead guilty after learning that Campbell would lie at trial. Regardless, Harvey did not include or mention "Campbell's" letter in his federal habeas petition.

16

Therefore, the state's adjudication of Claim 4 was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of facts, thus, I grant the motion to dismiss as to Claim 4.

## IV.

For the foregoing reasons, I grant Respondent's motion to dismiss, and dismiss the petition for a writ of habeas corpus. Based upon my finding that Harvey has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

**ENTER**: This 13th day of April, 2016.

                                                      Senior United States District Judge